IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LINDA FINCH, as Next Friend                                                                    PLAINTIFF
of Johnny Ebert


VS.                                          CASE NO. 4:05-CV-4070

TEXARKANA SCHOOL DISTRICT
NO. 7 OF MILLER COUNTY                                                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of Defendant Texarkana School District No. 7 of Miller County. (Doc. 27). Plaintiff Linda Finch, as Next Friend of Johnny Ebert, has responded. (Doc. 30). Defendant has replied to Plaintiff's response. (Doc. 33). Plaintiff filed a Sur-Reply to Defendant's reply. (Doc. 37). The matter is ripe for consideration.

## I. BACKGROUND

Plaintiff Linda Finch ("Plaintiff" or "Finch") brings this lawsuit as next friend of her son, Johnny Ebert, against Defendant Texarkana School District No. 7 of Miller County (the "School District"). Ebert attended the School District's Arkansas High School, where he qualified for special education services due to his autism and mentally challenged status. On November 14, 2001, the School District appointed Ebert a personal aide to assist him with his daily activities at Arkansas High School.

Due Process Records (Doc. 32-11) show that the School District determined, at a conference on April 25, 2002, that Ebert had made progress with regard to his independent functioning and no longer needed an aide. Consequently, the School District removed Ebert's aide. Factual disputes regarding the April 25, 2002 conference exist, including whether Finch was provided notice of the

decision to remove her son's personal aide. The School District's procedures require parental consent for the appointment or removal of a personal aide to a special education student. (Doc. 32-13, pg. 36).

The School District appointed a new personal aide, Susan Dansby, to assist Ebert beginning in the fall semester of 2002. Finch was aware that Dansby was her son's new personal aide. While Dansby served as Ebert's personal aide, she remained in his presence at all times, except when he was changing clothes following physical education class. During those times, Dansby would stand directly outside the locker room door to make sure Ebert was alone inside the locker room while changing clothes. To further assure that he was able to change clothes in the locker room in private, Ebert was dismissed five minutes prior to the other students in his physical education class.

The School District removed Dansby from her position as Ebert's aide during the spring semester of 2003. The School District did not conduct a hearing concerning the removal of Dansby from her position as Ebert's full-time personal aide. Dansby testified at her deposition that she was told that Finch decided that Ebert no longer needed an aide. (Doc. 32-6, pg. 22). However, Finch's affidavit, attached to her response to the summary judgment motion, reveals that: (1) she did not request Dansby's removal; (2) she did not receive notice that her son's aide was being removed; (3) she would have objected to Dansby's removal; and (4) she would have immediately withdrawn her son from school until an aide was re-assigned to him. (Doc. 32-3, pgs. 1-2).

Following Dansby's removal as Ebert's personal aide, Ebert was anally raped by Willie Jackson, a mentally retarded student. The rape took place on April 16, 2003, in the locker room immediately following physical education class. Willie Jackson had transferred to the School District from the Hope School District in Hope, Arkansas, (the "Hope District") where he had been

a special education student. When Jackson transferred to the School District in April of 2002, the School District requested and obtained from the Hope District the most current information available on Jackson, including his most recent annual review and his most current Individual Education Program ("IEP"). The annual review obtained by the School District revealed that while in the Hope District, Jackson had engaged in inappropriate physical conduct–including "feeling and touching a young lady" on a school bus. (Doc. 32-9, pgs. 2-4). The Hope District considered the incident "very severe" and placed Jackson under a Behavioral Plan as a part of his IEP. Jackson's 2001 annual review attested that, subsequent to the institution of the behavioral plan, Jackson had made improvements regarding inappropriate physical contact. (Doc. 32-8, pg. 10). Despite these prior incidents and the effectiveness of the Hope District's behavioral plan for Jackson, the School District employee in charge of reviewing Jackson's transfer documents, Claudette Spillyards, never saw or requested a copy of Jackson's behavioral plan from the Hope District. In addition, Spillyards did not discuss incidents of Jackson's inappropriate physical conduct with anyone from the Hope District. At her deposition, Spillyards testified that she was not aware of the incident involving Jackson's inappropriate touching and feeling of another student on a Hope District bus. (Doc. 32-8, pg. 5).

After he was raped by Jackson, Ebert had great difficulty returning to his classes at the School District. Upon the recommendation of the School District's counselor, Ebert transferred to Fouke High School, where he experienced further problems learning and concentrating on schoolwork. Finch filed the present suit for damages against the School District on September 28, 2005. The matter is now before the Court on the School District's Motion for Summary Judgment.

3

## II. SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The movant's burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986). The Court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged

its initial burden of production. *Celotex Corp.*, 477 U.S. at 330-331 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-161, 90 S.Ct. 1598, 1608-10, 26 L.Ed.2d 142 (1970)).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

### III. DISCUSSION

Plaintiff Linda Finch brings claims against the School District pursuant to 1) 42 U.S.C. § 1983; 2) Title IX of the Education Amendments of 1972; 3) the Individuals with Disabilities Education Act, 20 U.S.C. § 1400-1419; and 4) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Finch also brings causes of action against the School District for negligence and intentional infliction of emotional distress.  The Court will address each in turn.

a. Plaintiff's § 1983 Claim

Finch proceeds against the School District pursuant to 42 U.S.C.A. § 1983, which provides, in relevant part:

> Every person who, under color of any ... custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 is a remedial statute. It " 'is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271,

114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).  Finch alleges that as a result of the School District's conduct, her son was rendered vulnerable and subjected to a private assault, depriving him without due process of law of his liberty interests in bodily integrity and his right to be secure in his person.  Thus, it is clear that Finch's § 1983 claim is premised upon an alleged violation of rights secured by the Due Process Clause of the Fourteenth Amendment.  To establish a *prima facie* case under § 1983 for a deprivation of her son's Fourteenth Amendment due process rights, Finch must show: (1) that defendants' actions were taken under color of state authority, *Monroe v. Pape,* 365 U.S. 167, 172-87, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); (2) that defendants' actions impacted upon a constitutionally-protected right, *Paul v. Davis,* 424 U.S. 693, 710-12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 570-78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); (3) that defendant owed plaintiff a duty of care to protect this constitutional right, *Collins v. City of Harker Heights,* 503 U.S. 115, 123-27, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); and (4) that defendants breached such a duty of care, thereby resulting in a "deprivation" of that right within the meaning of § 1983. *Daniels v. Williams,* 474 U.S. 327, 329-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  Only the last of these requirements–that the School District breached a duty of care causing a deprivation–is disputed.  Whether the School District breached its duty of care, resulting in a deprivation of Ebert's due process rights in bodily integrity and personal security, will be discussed *infra*.

Finch's claims are subject to the general rule that states do not have a general affirmative obligation to protect individuals against private violence. *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  The Due Process Clause of the Fourteenth Amendment "is phrased as a limitation on the State's power to act, not as a guarantee

of certain minimal levels of safety and security." *Id.* at 195. "Its purpose [is] to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196. The due process clause's "guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm[,]" *County of Sacramento v. Lewis,* 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and "does not transform every tort committed by a state actor into a constitutional violation," *DeShaney,* 489 U.S. at 202. Put succinctly, the general rule is that a state's failure to protect an individual against private violence "simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

However, Courts have carved out exceptions to the no-duty-to-protect rule of *DeShaney*, holding that substantive due process requires a state to protect individuals under two theories. First, the state owes a duty to protect those in its custody. *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992) (en banc). Precedent from this circuit clearly establishes that compulsory school attendance does not amount to "custody" for the purposes of this exception. *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 2003). Accordingly, the Court denies Finch's claim that the School District had a custodial duty to protect her son.

Second, the state owes a duty to protect an individual where the state affirmatively places a particular individual in a position of danger the individual would not otherwise have been in. *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988), *cert denied* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989); *Avalos v. City of Glenwood*, 382 F.3d 792, 798 -799 (8th Cir. 2004). "[I]f the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, depending on his or her state of mind, may have committed a constitutional tort." *S.S. v. McMullen,* 225 F.3d 960, 962 (8th Cir. 2000) (en banc). Under the state-

created danger theory, Finch must prove (1) membership in a limited, precisely definable group; (2) state conduct which placed Plaintiff at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to the School District; (4) the School District acted recklessly in conscious disregard of the risk; and (5) in total, the School District's conduct shocks the conscience. *Avalos v. City of Glenwood*, 382 F.3d at 799; Joseph M. Pellicciotti, Annotation, *"State-created danger," or similar theory, as basis for civil rights action under 42 U.S.C.A. § 1983*, 159 A.L.R. Fed. 37 (2000).

The culpability threshold in state-created danger cases is high. Mere negligence is not conscience-shocking and cannot support a claim alleging a violation of a plaintiff's substantive due process rights. *Terry B. v. Gilkey,* 229 F.3d 680, 684 (8th Cir. 2000). Actionable substantive due process claims involve abuses of power "so brutal and offensive" that they do not comport with traditional ideas of fair play and decency. *Avalos v. City of Glenwood,* 382 F.3d at 800 (quoting *McMullen,* 225 F.3d at 964).

For guidance in determining whether the School District's conduct is sufficiently culpable to constitute a violation of substantive due process, the Court again looks to *DeShaney,* which involved the claim of the boy Joshua, who had been beaten repeatedly by his father. *See* 489 U.S. at 192-93. When Joshua was treated at a hospital for bruises and abrasions, the Department of Social Services recommended that the boy be placed in the hospital's temporary custody. *See id.* at 192. Three days later, a "Child Protection Team" consisting of Department caseworkers determined that there was insufficient evidence of child abuse and that Joshua should be returned to his father's custody. Later, caseworkers from the Department continued to monitor the DeShaney home, observed numerous suspicious injuries, and were twice informed of such injuries by emergency room

8

personnel. However, caseworkers took no action to protect Joshua from his father. *See id.* at 192-93. Eventually, Joshua was beaten so severely that he suffered severe brain damage and was rendered profoundly retarded. *See id.* at 193. Joshua and his mother sued the Department and several of its employees for failing to protect Joshua from his father, but the Court held that the defendants had no duty under the Due Process Clause to protect the child. *See id.* at 195-97, 202. In rejecting their substantive due process claim, the Supreme Court wrote:

> [w]hile the State may have been aware of the dangers that Joshua faced in the free world, it *played no part in their creation, nor did it do anything to render him any more vulnerable* to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all.

489 U.S. at 201 (emphasis added).

In contrast to *DeShaney*, Finch argues that the School District–by its affirmative acts–played an active role in creating the dangers that her son encountered. The summary judgment record reveals genuine issues of material fact with regard to the School District's affirmative actions which placed Ebert in a position of danger he otherwise would not have faced. Specifically, genuine factual disputes surround the removal of Ebert's personal aide, Susan Dansby, including whether notice of Dansby's removal was provided to Finch, and whether Finch requested or consented to Dansby's removal. In addition, genuine issues of material fact surround the School District's review of Willie Jackson's transfer documents from the Hope District. The result is that genuine issues of fact are present in the record with regard to: (1) Ebert's membership in a limited, precisely definable group threatened by Jackson's behavior; (2) whether the School District's conduct placed Plaintiff at significant risk of serious, immediate, and proximate harm; (3) whether the risk of harm to Ebert was obvious or known to the School District; (4) whether the School District acted recklessly in

conscious disregard of the risk to Ebert; and (5) in total, whether the School District's conduct is conscious-shocking. The Court finds that Finch has carried her burden of demonstrating the existence of specific facts in the record creating a genuine issue for trial on her § 1983 substantive due process claim. Further, the Court finds that Finch has come forward with sufficient probative evidence, in the form affidavits and depositions in the summary judgment record, that would allow a reasonable jury to return a verdict in her favor. Accordingly, the School District's Motion for Summary Judgment with regard to Finch's § 1983 substantive due process claim must be denied.

b. Plaintiff's Title IX Claim

Finch also brings a claim against the School District pursuant to Title IX of the Education Amendments of 1972 ("Title IX"). Title IX provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A private damages action may lie against a school in cases of student-on-student harassment where the funding recipient acts with deliberate indifference to known acts of harassment. *Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). A recipient of federal funds may only be liable for damages arising from its *own* misconduct. *Davis*, 526 U.S. at 640 (emphasis added). Further, to be liable under Title IX, School District must have "some control" over the alleged harassment. *Davis*, 526 U.S. at 644.

In the case before the Court, the viability of Finch's Title IX claim against the School District concerns the School District's response to Jackson's past behavioral incidents. Upon review of the summary judgment record, the Court cannot say as a matter of law that the School District was not

10

deliberately indifferent to Jackson's past incidents of inappropriate physical conduct. As with Finch's substantive due process claim, genuine disputes of material fact exist with regard to the School District's review of Jackson's transfer documents from the Hope District and the School District's response to Jackson's past incidents of inappropriate physical behavior. Further, the factual issues present regarding Finch's Title IX claim concern the School District's own acts and omissions, not those of Jackson. The result is that the School District's Motion for Summary Judgment with regard to Finch's Title IX claim must be denied.

c. Plaintiff's Individuals with Disabilities Education Act Claim

Finch's third claim against the School District is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"). Congress enacted the IDEA for the purpose of making available a "free appropriate public education" to all children with disabilities. 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, the Court "shall grant such relief as the court determines is appropriate." *See* 20 U.S.C. § 1415(i)(2)(B)(iii). "Such relief" includes compensatory education services. *See Miener v. Missouri,* 800 F.2d 749, 754 (8th Cir. 1986). However, relief available to IDEA plaintiffs does not include general and punitive damages. *Heidemann v. Rother,* 84 F.3d 1021, 1033 (8th Cir. 1996); *Hoekstra v. Independent Sch. Dist. No. 283,* 103 F.3d 624, 625-26 (8th Cir. 1996).

In *Heidemann v. Rother,* as in the case before the Court, the plaintiff sought damages in a § 1983 action based on alleged violations of the IDEA. 84 F.3d at 1032-3. The Eighth Circuit, agreeing with Sixth Circuit precedent, held that "claims based upon alleged violations of the IDEA may not be pursued in this § 1983 action because general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA." *Id.* at 1033; *see Crocker v. Tennessee*

*Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386 (6th Cir. 1992) ( "[W]e do not find case authority interpreting the [IDEA] to allow an award of general damages for emotional injury or injury to a dignitary interest.").

Instead of compensatory education services, Finch seeks an award of damages against the School District in this case. Such relief is not available to Finch under the IDEA. *Heidemann,* 84 F.3d at 1033. However, the School District has not moved for summary judgment with regard to Plaintiff's IDEA claim. In its reply brief, the School District argues that any alleged violation of the IDEA "would have to be pursued by Plaintiff another day in another forum." (Doc. 33, pg. 8). However, this argument aside, the School District does not move for summary judgment on Finch's IDEA claim, nor does it properly support the same. As a result, Plaintiff's IDEA claim proceeds to trial.

d. Plaintiff's Section 504 of the Rehabilitation Act Claim

Finch also alleges that the School District violated provisions of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"). Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," *see* 29 U.S.C. § 794(a). "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d. 907, 911 (8th Cir. 1998)(citing § 794(a)).

As with Plaintiff's IDEA claim, the School District argues that Plaintiff's Section 504 claim "would have to be pursued by Plaintiff another day in another forum." (Doc. 33, pg. 8). This argument aside, the School District has not moved for summary judgment on Plaintiff's Section 504 claim, nor has it properly supported the same. Accordingly, Finch's claim brought pursuant to Section 504 of the Rehabilitation act proceeds to trial.

e. Plaintiff's Negligence Claim

Finch also seeks an award of damages based upon the School District's negligent failure to provide adequate supervision for her son. The parties do not dispute that Arkansas law provides immunity to the School District for this claim. Arkansas law, by statute, provides tort immunity to, *inter alia*, school districts, except to the extent they are covered by liability insurance. Ark. Code Ann. § 21-9-301; *Rudd v. Pulaski County Special Sch. Dist.* 341 Ark. 794, 802, 20 S.W.3d 310, 315 (2000); *Cousins v. Dennis*, 298 Ark. 310, 767 S.W.2d 296 (1989); *Matthews v. Martin*, 280 Ark. 345, 658 S.W.2d 374 (1983). Finch opposes the School District's Motion for Summary Judgment with regard to her negligence claims because the School District has not carried its burden of proving that no liability insurance policy exists–it has not "produced the actual [insurance] policy itself." (Doc. 32, pg. 29). Despite the fact that Finch's negligence claims are clearly barred by statute, the summary judgment record does not contain proof, by affidavit or otherwise, that the School District does not carry liability insurance. Accordingly, summary judgment in favor of the School District with regard to Finch's negligence claims is improper.

f. Plaintiff's Intentional Infliction of Emotional Distress Claim

Finch's final claim against the School District is for intentional infliction of emotional

13

distress. In Arkansas, intentional infliction of emotional distress is the tort of outrage. *Davis v. Fulton Co., Ark.*, 884 F.Supp. 1245 (E.D. Ark. 1995), *aff'd* 90 F.3d 1346 (8th Cir. 1996). As an intentional tort, outrage falls outside the immunity afforded by Ark. Code Ann. § 21-9-301. *Deitsch v. Tillery*, 309 Ark. 401, 407, 833 S.W.2d 760 (1992).

Arkansas courts have "consistently taken a narrow view in recognizing claims for the tort of outrage." *City of Green Forest v. Morse,* 316 Ark. 540, 542, 873 S.W.2d 155 (1994). Indeed, the Arkansas Supreme Court has taken great care to point out that this tort does not make actionable every " insult or indignity one must endure in life," *Dillard Dept. Stores, Inc. v. Adams,* 315 Ark. 303, 305, 867 S.W.2d 442 (1993)(quoting *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 244, 743 S.W.2d 380 (1988)), but instead provides a basis for recovery only for "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *M.B.M. Co. v. Counce,* 268 Ark. 269, 280, 596 S.W.2d 681 (1980); *see also Qualls v. Hickory Springs Mfg. Co.,* 994 F.2d 505, 510 (8th Cir. 1993). In order to establish a *prima facie* case for her outrage claim, Finch must show:

> (1) the actor[s] intended to inflict emotional distress or willfully and wantonly knew or should have known that emotional distress was the likely result of [their] conduct; (2) the conduct was extreme and outrageous ...; (3) the actions of the School District were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Thornton v. Squyres,* 317 Ark. 374, 376, 877 S.W.2d 921 (1994); *see also M.B.M. Co. v. Counce,* 268 Ark. at 277-280. Arkansas caselaw makes clear that "[t]he tort of outrage is not easily established; merely describing conduct as outrageous does not make it so. Clear-cut proof is necessary to establish the four elements" of this tort. *Cordes v. Outdoor Living Ctr., Inc.,* 301 Ark. 26, 34, 781 S.W.2d 31 (1989).

In her response to the School District's Motion for Summary Judgment, Finch fails to address the School District's arguments regarding her outrage claim, apparently conceding the same. At any rate, Finch has not demonstrated the existence of specific facts in the record creating a genuine issue for trial on her outrage claim. As a result, summary judgment in favor of the School District on Finch's outrage claim is proper. *See Krenik v. County of LeSueur,* 47 F.3d at 957.

### IV. CONCLUSION

For reasons stated herein and above, Defendant Texarkana School District No. 7 of Miller County's Motion for Summary Judgment should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion for Summary Judgment is **GRANTED** with regard to Plaintiff's intentional infliction of emotion distress or outrage claim, and **DENIED** with regard to the remainder of Plaintiff's claims, which will proceed to trial. An Order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 3rd day of April, 2008.

                                                  /s/Harry F. Barnes
                                             Hon. Harry F. Barnes
                                             United States District Judge